Move on to the second case, Babcock V.Butler County. Mr. Swindler, yes, good morning, Your Honor. Could you give me a minute while I collect myself? Absolutely. Thank you. Go ahead. Good morning, Your Honor, Your Honors. My name is Justin Swindler. I represent the plaintiff's appellants in a lawsuit that they brought against Butler County. Plaintiffs are approximately 100 correction officers who serve at Butler County Prison. They've brought this case asserting failure to pay overtime, and the overtime that they seek they weren't paid is specifically a 15-minute portion of their hour-long cold meal period. Why shouldn't you be required to stick to the labor contract that you negotiated? Well, Your Honor. I mean, isn't that what you're arguing against? Your Honor, the law is clear that you can't contract around FLSA rights. An agreement to violate the FLSA is absolutely not enforceable. Yeah, but isn't your labor contract an interpretation of the requirements of the FLSA? No, Your Honor. It's very clear the labor contract itself states that it doesn't specifically preclude, for instance, the arbitrator from reaching any decisions on any statutory claims. There's no assertion in the labor contract at all that it would in any way require one decision one way or the other on an FLSA claim. Is the union supporting you in this case? Your Honor, we work with the union. I don't think that that's on the record. I don't know if I should address it. They didn't file a brief, did they? They did not file a brief, that's true. An anonymous brief. That is true, Your Honor. And they know about this case? They do know about this case, Your Honor. Okay. They did arbitrate this issue. That is, I guess, part of the record. They did arbitrate the issue. We filed in district court. The court wanted the issue to be arbitrated. The arbitrator ultimately determined he didn't have authority under the agreement to rule on an FLSA issue, and hence we then went back to district court. Let me ask you this question. Most of the courts that have addressed the issue seem to have adopted the predominant benefits test. That's true. You seem to want us to look at the completely relieved from duty standard and adopt that. Is that right? No, Your Honor. We think that this case doesn't merit the court to pick either side. We've argued in our brief almost completely that we make the predominant benefit test analysis clearly, and I think it's important to point out to the court this comes to the court on a 12B6 motion. So every decision cited by the defendants are summary judgment decisions or actually decisions attempting to overturn a jury verdict. The predominant benefit test requires a balancing of all the factors. And quite frankly, going back to the union question, if anything, the contract shows who the predominant beneficiary of the meal break is because the counties agreed to pay for three-quarters of it. Well, in order to determine whether a claim has been stated at the 12B6 stage, right? Yes. You have to pick a test and see whether what is alleged would be the test, right? Yes. Oh, I absolutely agree with that. I'm happy we have that. That's right. Right. So that's why I'm asking you. Now, I presume your answer is it doesn't matter which test, we're fine, right? But we're not going to write an opinion that says that, right? Sure. So hence my question. Your Honor, I'll say that the more I've read these cases, even immediately since I filed the brief, the more it appears to me that the distinction between the two tests is mostly one of semantics. There hasn't been a single court. Well, in most courts of appeals, in fact, virtually every court of appeal that has weighed in on the issue has adopted the predominant benefit test. Absolutely. Even though they discuss language with regard to that other so-called test. That's right. There's only two courts that have potentially held otherwise. When you look at the facts of the case, and this is why I say it's really more of semantics, these aren't cases where no court has ever held, I don't even think a district court, let alone a circuit, that if you put keys onto your jeans, because you have to have keys as part of your job duty as a jailer, that somehow is a duty that turns the meal period into a compensable period. All we're trying to do is streamline the argument. I understand, too. Right? If you say, and you don't have to, but if you say completely, you know, we satisfied both, but I admit predominant benefit seems to be where everyone is, then we can just have a discussion about whether you meant predominant benefits and the district court was wrong and whether we should reverse it. Our brief is, I think, fairly explicit. That is what we're saying. We're saying it doesn't really matter. We cite the court to every circuit-level decision we knew of that dealt with this issue, and all but two of them said predominant benefit. And there's a question, and we disclose this, too, in the 11th Circuit, because they ruled on a 7K issue where they say predominant benefit. Judge Slover to ask you a question that I want to follow up on. Absolutely. It has to do with the collective bargaining agreement, which I happen to think has a role in this case one way or another. Right. And I don't know, maybe you misspoke or I misheard. Does the collective bargaining agreement impose greater restrictions than those that are allowed under the Labor Standards Act? To me it seemed rather benign and pretty straightforward. Just for clarification, what do you mean by greater restrictions? The collective bargaining agreement in this case is or is not consistent with what is required by the Labor Standards Act. It's not consistent. It's too much? No. Does it impose more requirements than those that are allowed under the Labor Standards Act? It allows a 15-minute period that is on call to be non-paid, which is illegal under the FLSA. That's not unusual by other collective bargaining agreements, is it? William, again, maybe I'm not understanding the question fully. I don't know. I'm not going to start you. It's not unusual. A 15-minute lunch period doesn't have to be compensated, does it? Your Honor, if it was only a 15-minute period, I think there's some... You're getting 45 minutes of compensated lunch and you haven't added 15 minutes, and the employees in this case, the prison guards, is that correct? That's correct. Are paid eight hours a day. That's right. And that's consistent with the Labor Standards Act. Well, it's consistent with the CBA. I mean, it's our position in this case. Well, it's consistent with the act also, but it's also what the CBA requires. You're talking about the fair labor standards. No, I understand. It's not inconsistent with the act. Well, Your Honor, our argument clearly is that it is. And so I don't know if I'm not understanding the question properly. Put it again. Eight hours a day. Right. They're paid... I understand the question now. Okay. What you're saying is if only eight hours is hours worked, they don't have to pay overtime so long as they're not beyond 40. That really wasn't my question. They're paid for eight hours a day. Yes. Period. They're paid for, I think it's the requirement, is anything over 171 hours for a 28-day period. They have to be paid. I understand where you're going. Your Honor, it is the defendant's burden to show that somebody can... Other than for those 15 minutes, are they fairly paid under the Labor Standards Act? We're not asserting otherwise. Okay. So your complaint is about 15 minutes. Our complaint is about the on-call meal period, and specifically the 15-minute non-paid portion of it. Yes. Now what are the restrictions that your members are subject to? Your Honor, these individuals are prison guards. They are not allowed to leave the secure area of the prison. That means that they can't go out to their car. They can't go out to restaurants. They can't dine. Can you put this in context? I'm sorry. I think it's part of the... Where is Butler Prison in connection with the area around it? Is it an isolated area, Pennsylvania? It's actually not. I've been to it. It's in the city of Butler. Man, where is this? It's north of Pittsburgh. It's about an hour north of Pittsburgh. It's not a big town, and so it's not Philadelphia or North Jersey or anything like that, but it is a town. So there's some substance to the idea you want to leave the prison and go run errands. Yeah, because when I went there for a mediation, I believe there was some type of eatery. In some prisons you can't do that. I mean, they're kind of isolated institutions, and when you say, I have to stay in uniform, I like to run errands, I want to go to a restaurant, you really can't do that. No, well, I mean, they can't even, you know, and I... Not that you can't physically. No, I mean, they don't even have 15 minutes. A lot of them smoke cigarettes, and they don't even have 15 minutes where they're allowed to do that.  I think that's good, that they can smoke cigarettes. Yeah, I was wondering if I was going to be called on that. Could you distinguish this from Leahy, which seems to be this case on all points where the court said, the court found the collective bargaining agreement, which is similar to the one in this case, is dispositive of the meal-time compensation. Well, Your Honor, the only thing that the CBA can be used to do is determine what the thought of the parties were, because the intent of the parties can matter to define how it's worked. Well, it does more than the thought of the parties, it's a signed agreement. It's an enforceable signed agreement. If this court found that the time at issue was compensable on call time, the arbitration agreement cannot, excuse me, the CBA cannot say... See, that's why I asked you if the CBA is imposing requirements that are contrary to the fair labor standards, because if they are, then you're 100% correct, I think. But if they're not, maybe the CBA controls the meal-time compensation issue. Well, Your Honor, the arbitrator specifically found otherwise in the arbitration. He found that he couldn't reach the issue as to whether the FLSA compelled compensation, because he didn't have authority to do it. The district court also did not specifically rely on the CBA. I do think the intent of the parties is... I mean, we're not asking the court to ignore the CBA. We think, actually, when you look at what the intent of the parties is, they've agreed that most of the meal period inheres to the benefit of the employer. The problem here is you're not allowed to split paid time. If the time predominantly benefits the employer, all of it is compensable, not the predominant amount of it is compensable. And there's no law to say otherwise. And I do just want to make this one point. Because we're here on 12B-6, the full restrictions have not been subject to discovery. The full realities of the staffing levels... Are they challenged? We challenge them by pleading some of them, but we weren't given an opportunity even to amend to add additional restrictions. Well, that's a good point, though. Yeah. What if we take your pleadings as true? Well, there's additional facts. They're not allowed to have friends and family come in. There's contraband they're not allowed to bring in. Well, because they're not allowed... Nobody is allowed to bring in contraband. I want to be clear. I don't mean illegal narcotics. What I mean is there's certain types of reading material they're not allowed to bring in. There's certain types of... Well, you can't bring in laser blades. I mean, there's certain things that can't... These are institutions of confinement. But, Your Honor, that's exactly the issue. These individuals who are not prisoners are subject to confinement. And I think one of the issues that is important is when the court decided that he didn't need discovery, what he basically... And, by the way, there is not a single case cited that was decided on the pleadings for this issue. I mean, this is an issue that is factually important to get to discovery. What's the discovery that you would get to if given the opportunity? Well, under the Pennsylvania state law, the government is required to have written publications about what their staffing levels have to be. They have the required to have done analysis as to what's required to have a safe prison population. We think that those requirements will allow us to see that they need these individuals in the prison or they literally have to hire more individuals. It shows the importance of the on-call. It's another benefit to the defendants. We didn't plead the frequency of interruptions. We should be permitted to do so. Again, we weren't given an opportunity to... What do you mean by frequency? How often these individuals have to respond to an on-call emergency or situation during their meal period is a factor to be evaluated in the predominant benefit test. There's nothing in the record to suggest... But if that were to occur, they get paid. Your Honor, the reality is that the frequency of interruptions is still a factor to consider under the predominant benefit test. But they get paid. I mean, your claim is we want to get paid. But Your Honor, the issue becomes how much freedom they have in case of an emergency. And if they're called, let's say, every other day, it shows just... They have no freedom. They have no freedom in the sense, first of all, they get paid 45 minutes, but if they get interrupted so that they have no freedom, they'll get paid for that. Well, Your Honor, that's also not in the record. To be fair, that's not in our pleadings, what you just said. I don't dispute it, but that's not in the pleadings either. But it's part of the collective bargaining agreement. Well, Your Honor, again, I think the issue is that in every decision where predominant benefit is looked at, frequency of interruptions is an issue. There's no question that if you're interrupted, you have to be paid. It is still a factor to determine how free the on-call time is. One of the issues that the district court, I think, clearly erred on is the court found that being restricted to the prison and being on-call is a benefit for the plaintiffs. And that really, I think, shows the mistake the court made, because once you get to that point that the restriction is in order to the benefit of the plaintiffs, and he reached this because he said the other guards need them there, and in fact, ethical and safety is improved by these individuals being forced... It's very similar, isn't it, to being a fireman at a fire station, being a police officer in a police station. You've got to wear that uniform eight hours a day, and you're always on-call. And in Leahy, if I remember correctly, the police officers had to ask permission to go to lunch, and that was upheld under the collective bargaining agreement. Your Honor, I think it is like the police cases, but I'll point out the police... Like McGrath in Philadelphia went to a jury, and there the restrictions weren't as much. The individuals could go anywhere in Philadelphia. The police officers were... They had to remain in uniform. They had to deal with if they saw a civilian ask for help, but they were allowed to go home. They were allowed to run personal errands. They had 30 minutes. All they had to do was monitor a radio. Our individuals are basically in the so-called break room. They have to be very close to the riot gear, and they have to respond on a second's notice if there's an emergency. It's a very different situation, and even in McGrath v. Philadelphia, which is an Eastern District police case, it went to a jury. It was not decided. It actually went to a jury. I think it's also worth pointing out, again, because the court found these restrictions went to the benefit of the plaintiffs because it increases safety of the prison, and somehow prison property and the prisoners weren't part of that analysis. The judge just basically said that the ability of the guards to dress quickly into riot gear and assist their fellow officers in quelling the riot largely benefits those fellow officers. It shows a misinterpretation of what it means when we say it benefits the employee. Benefiting the employee means that they can pursue personal pursuits that are not job-related. These individuals are placed in a dangerous position because of their job, and they do need backup officers there in case something happens. They took a dangerous job. Yes. I mean, they took a job as a prison guard. Yes. So why is that surprising? It's not, Your Honor, but it's like it's, you know, when this court reached a decision in Tyson Foods, DeAncio v. Tyson Foods, they held that dining and doffing personal protective equipment was impenetrable time. Somehow I think that was the riot case. But those individuals, Your Honor, I tried. So those individuals who have to dine and doff PPE, that's a safety requirement on the job. Now, yes, the chicken farmer signed up for a job where they would have to wear PPE. It doesn't make it a personal duty. It's a professional one, and it is work time because of that. But this is the point, if I can just make it. Because he misapplied who that restriction benefits, and I don't think the defendants will tell you that restriction benefits. How do we decide who the restriction benefits? Well, I think you need a full factual record. You have to allow us to take discovery. You have to hear about all the nuances, how often they're interrupted, how the prison is staffed, what type of staffing would be needed if we didn't keep these individuals on premises, how these individuals actually are able to use their lunch break because of the restrictions. Can they watch TV? Can they work out? Are they forced to basically watch an alarm the whole time? These are the facts that need to be uncovered in discovery. On page 40 of your brief, you contend that if permitted the chance to amend your complaint, you would be able to plead additional facts that would permit the complaint to survive a motion to dismiss. But you don't elaborate. What additional facts would you plead? We would plead more specifically about how they actually have to spend their meal periods, how often they're interrupted, how often they actually can eat, how they have to basically stop. What do you mean how often they can eat? This is their lunch hour. In other words, they're not sitting at a table relaxed for an hour. And I think that we should be able to plead facts that show that that's not the way this is happening. They're not conversing about personal issues. They're not allowed to bring in certain reading materials. What do you mean you're not conversing? Does anybody stop you from what you can talk about at the table? Well, you know, there are, there are, there are, no. I mean, the answer is no. They don't stop you specifically what you can talk about. Okay, so you shouldn't have said that. Well, I guess what I mean is that the reality, I shouldn't have said that. But I didn't mean it in the way that it came out. What I meant is because of the context that they're in a prison, that they're on call. But they took a job in a prison, so they can't be surprised that they're in a prison. No, but the whole. That's part of the job. But the whole point of the FLSA is to put employees on an equal bargaining power with their employer. In every case under the FLSA, you could, one could argue that they took the job. They knew that they weren't going to get paid for dining and doffing PPE. They took the job. They knew they weren't going to get paid for travel time. They took the job. They knew that they were going to have to be on call. That doesn't answer the question under the FLSA. We're not suing because they shouldn't have been put in a date or position. We're suing because the reality of the on-call time and the restrictions they face makes it compensable work time. It's not a situation where the individual is just free to use the time and to pursue his own personal pursuits, which under the predominant benefit test is ultimately what the court is looking at. Do these individuals have enough freedom to pursue their own personal pursuits or not? And here the answer is to the negative. And just getting back to this point, that the court found these restrictions benefited the employees and the court's analysis. Did you save time for rebuttal? I'm sorry? Did you save time for rebuttal? I tried to, but I've used it, so. We'll just give you two minutes. I appreciate that. You have a little extra time. Thank you, Your Honor. Thank you. We'll get you back on the floor. Thank you. Ms. Jones? May it please the Court? Good morning. Marie Miley Jones for Appalachia Butler County, which is situated less than an hour north of Pittsburgh, a somewhat rural but small town. And the jail prison is located not far from the courthouse, but one would characterize it as a rural area generally, not a metropolis. As a what? I didn't understand. As rural, as opposed to a big city. It's a small town. Is this a county jail or a state prison? It's a county jail. County jail. So it's for short-term prisoners or those awaiting trial? At times up to a couple of years. But, yes, generally short-term or if a state is sentenced less than two to three years, they can be held at the prison. Okay. A relatively newer facility now, which is the genesis of this particular collective bargaining agreement, which is of interest because that provision relative to the meal period was specifically bargained so that there was, in fact, an hour, a long period of time. I give that as history. But the bargaining agreement to CBA is part of the record at the docket as an exhibit within the motions. How long does it last, this labor, the CBA? I believe, Your Honor, they are just renegotiating this year. I believe they're in finalizing of negotiations this year. So it was for a period of time and the period, obviously, relative to this claim. Let me ask Mr. Swidler. I'm just curious about this. Is this collective bargaining agreement in any way inconsistent? It's supposed to be consistent. It's supposed to be, and we believe it is consistent. All right. To your knowledge, there's nothing that's inconsistent with the Fair Labor Standards Act? No. Our position is that all provisions... I would have expected you to say no. Of course. But the only argument they've raised is that this extra 15 minutes is unpaid, even though it's part of the hour-long lunch break. And our position is that's not inconsistent. The FSLA requires a paid lunch period? The FLSA requires payment for eight hours of work. All right. It doesn't say anything about paid lunch period? No. In fact, generally, the law says meal periods are not compensable unless there's other circumstances that make them compensable. In fact, the regulations at issue clearly indicate that's the general premise from which you start or you begin. You do have to give a lunch period? Yes. At least half an hour, is it? Yes. And in this case, they give them one hour, again, based on history, to allow that full one-hour period to actually be restful, to be a break, to be a duty-free period. They do pay them 45 minutes of it, in essence, a negotiated amount of time. Could you address Mr. Swidler's point that, if I understand correctly, no court has ever decided this issue on a motion, a 12B6 motion to dismiss? This meal period issue has certainly not been directly decided by the Third Circuit. Meal periods have been decided by other circuits and other courts. Well, he's talking about dismissal and pleadings. Yes. And even generally, some courts, at least that have appealed so that we can look at the decisions and argue them to you, have directly addressed them on summary judgment or later. But that is not to say it is not still a question of law that the court can consider or that would be permitted to be reviewed at the stage of this case. Because many of the decisions that both parties look to were decided by courts with a factual record, admittedly larger than the one we have here, but facts that may have been in dispute, and yet were able to say there's no material issue of dispute and we can make a judgment as a matter of law. Here, we take true every allegation they made in two versions of the complaint. There's an amended complaint as well, two versions. Isn't the issue not whether you're willing to take into account every fact that they've alleged, but the argument made is I haven't had the opportunity to learn all of the facts. This is as much as I've fled. If we apply the predominant benefits test, which you would endorse, it would appear that we should get by and not be dismissed and then have access to the discovery that we need so we can have, this is their argument, the full record that you've alluded to in these other cases. And that short of that, why should we affirm the dismissal on what amounts to an incomplete record? I don't believe it's incomplete for purposes of this analysis because the trial court took every single allegation as true. Plaintiffs have every opportunity to raise every single possible fact. Interestingly, they never allege they were ever interrupted during this meal period. Isn't that a critical fact you would allege if that's part of your claim, that you're not getting paid when you're interrupted? Was there a request in the district court to file an amended complaint? This record is on an amended complaint. Oh, there was an amendment? Yes, this is the second complaint. So it's not as though, number one, they don't have every fact at their disposal. They're the correctional officers. They're the ones alleging the problems. They're the ones alleging the restrictions. Interestingly, the record was taken as very clear, true, and considered restrictions. But when you look at the case law that you're allowed to review in terms of the predominant benefit test, how other circuits even have addressed these kinds of issues in firefighter police cases, those standards say they're limited restrictions or restrictions which are reasonable and still allow the officers to have a duty-free period, a period which is not primarily providing official responsibilities. Can we go back to the cases that you've alluded to? If all of those cases were determined after a full exegesis of the facts and it's a summary judgment record, isn't it odd that there are no cases that have come to the circuit and been ruled on at this stage, at the motion to dismiss stage? I don't think it's – Because I would presume in these other cases, right, the parties are similarly situated. You argued a moment ago, well, the officers are in charge of all the facts. What more discovery do they want? Well, I presume, and you'll correct me if I'm wrong, that all of the other plaintiffs in all of these other cases that were determined at summary judgment stage, likewise, were in charge of the facts. So why is there a different analysis called for here than in all of those other cases? I would argue, Your Honor, that it's because in many, if not all of those cases, the record that was developed demonstrated there had been disputes about the facts alleged. That is, officers said X, Y, Z was what was going on. Employer slash entity, municipal entity said, no, it really went the other way. Many facts were developed and either in many instances, you know, there were enough instances where they could make it as a matter of law, but not every one. Mrs. Swidler just mentioned the fact he needs to know the frequency of interruptions, if any. First of all, I think he would know that, so he could have pled it. Second of all, I think that in many respects, because of the predominant benefit test, while that could be considered, if you look at the collective bargaining agreement and the circumstances in which it was set up, if they get interrupted infrequently, they get paid. So his argument that that's the biggest problem, therefore they're not getting paid for it, is gone. Because they do, in fact, get paid for that period. Isn't that required by the CFR? Doesn't 29 CFR Section 785-19-A state that an employee is not relieved if he, you don't have to get paid if you're relieved, is not relieved if he is required to perform any duties, whether active or inactive. Isn't that exactly what's at issue here? Well, I don't think it's exact. I think you've correctly set forth that provision, but that provision has been interpreted to say, at least in every other circuit but this one, that you still analyze the predominant benefit issue. So that's another way of looking at it. And secondly, Your Honor, the example that they use following that very statement relates to persons in positions where they have to stay at their desk or their machine or their piece of equipment. And obviously that's very different than what's going on here. These officers are at a post within an inmate section of a jail. Do they go to a lunchroom? What do they do? They do. They don't eat lunch. They do. They have lunch period. They have an exercise room. They can read. They can talk. They can do their paperwork. They can exercise. I think they even have a gym there, frankly. They have a very, very long list of things they could do. What they can't do is leave. But this is a secure facility. They can't take off their uniforms. Actually, I think today they can. There's been some change in leadership, so I think somebody might have agreed that there's a different system now. Can they take phone calls? At the time they could not. I'm sorry. Can they take personal phone calls? I believe they can. There may be a restriction on cell phone use in a jail, but there are phones in a jail. I know you're answering her questions, but is this in the record? No, it's not, and I was just trying to give a sense of the issues. I'm sorry. I shouldn't have taken it out of the record. But what's in the record is the CBA, and the CBA does describe that period very clearly. What's interesting, the language of that provision says, they are not permitted to leave absent leave granted by the warden. So there's even a provision. Well, I assume if somebody's sick, the warden will let them go to the dentist. But my point is, even their big picture item, you can never leave, there's a provision where you could if something was necessary. And I don't even think because the provisions of the section Judge Sliverder read say, even though no permission to leave the premises exists, that is not necessarily a deal breaker. That in and of itself, the fact that you're on call, not necessarily a deal breaker relative to being a non-compensable period. Has there been labor tension at this prison? Is that what's behind all this? Again, a little bit outside the record, but no. Because candidly, that one hour period was important to the staff and the officers, and it was in fact negotiated. Is it somewhat similar to the Reich case, where the workers were required to sit at a desk during their lunch period to perform tasks? Yes. Isn't it the same as being on call for 15 minutes? I don't think it is, Your Honor, because sitting at your desk not being able to leave, not being able to move, very different than being able to go work out if you want, being able to sit and read a book, being able to put your feet up and just get a little different. Their 15 minutes is the same as the other 45 minutes? It is. It's intended to be the hour, just because they negotiated to pay for a portion of that. So when counsel raises the issue about, oh, this 15 minutes really isn't fair because it's less than 20 and you can't have a break that's less than 20 and not be paid, that's a different section. That's not the meal period section that Judge Sloboda read. It's a wholly different section. And yes, it's only 15 minutes now that's unpaid, but it's part of a full hour. And again, just because a negotiation occurred and they were paid for three-quarters of that, is why it's 45 minutes versus 15 as opposed to 30 versus 30 or something else. I didn't read the meal period. I read the working, the part of the regs that talk about working. Yes, and you read the section 785.19 called bona fide meal periods. So I was just referring to it by title. So, Your Honors, we believe that the allegations as to the restrictions at most are de minimis and therefore limited in nature. And so while we wholeheartedly endorse the predominant benefit test, under any analysis we think that would fly. For the record, there is no longer a Ninth Circuit case in favor of the relief from duty test. That case was overruled, the bus case, by the Supreme Court. And the Eleventh Circuit has gone really both ways. So, frankly, it's the predominant benefit test or nothing. It wouldn't matter to you or the analysis if there was an interruption in the prison guard's lunch period once a week, let's say? I don't think it would because we're talking about an awful lot of hours for a 24-7 operation if every single officer had one. But if that were the case, Your Honor, first of all, I think there would be an allegation about that. There's no allegation of interruption at all. I think that's important. Well, that was what Mr. Swindler was saying about discovery that he doesn't know and he would like to discover those facts. He certainly shouldn't. His clients would know. And would be able to allege something in terms of interruption. That's a dicey one, right? I mean, you know, the plaintiffs are in charge of all the information, so they didn't come. That's dicey. Okay. But even say, if I just can follow up, even if you say, okay, I'd like to know the interruptions, again, they get paid if they're interrupted. So I think that's a critical defining and differentiating point for many of the other cases. A lot of those police cases, they don't get paid. Is interruption considered working? I'm sorry? Is interruption considered working? Not necessarily. Some courts have said you want to look at what's defined as working based on the collective bargaining agreement, based on some other issues. I would take the position that if it's infrequent, again, not alleged, so I guess we should watch that one, but you do get paid for it, or de minimis or limited, it doesn't matter, and it would not still be considered working for purposes of the way the cases have turned out. I want to take a step back with you because I want to understand this. So the CBA negotiates 45 minutes of free time and this 15-minute period that you can be subject to essentially working if there is a need. And if a need is identified, you're going to be paid. The CBA negotiates an hour. You're only paid for 45 minutes unless you are called somewhere during that hour and then you're paid for the 15 as well. But that's negotiated, right? I mean the 45 minutes of free time is part of the hour negotiation and the 15 minutes of on-call time is also part of that negotiation, no? I just want to be clear. The hour is the full free time and you are on-call during the whole hour. I'm not trying to imply you're only on-call the 15 minutes. Let's say your break is 12 to 1 and you get called out at 1230. That's within your hour, but within the first 45 minutes you're still on-call and you're going to get paid the whole hour then. So I didn't want to mislead you. No, no, I appreciate that. So when we're applying the predominant benefits test and each of these let's call them interruptions, having applied the test is a nurse to the benefit of the employer, then why wouldn't we allow them the opportunity to at least state their case and go forward at this point? Is your point that even applying the predominant benefits test, the actions that they're asked to perform do not inure to the benefit of the employer? Or is it they're getting paid, so what's the problem? It's more the latter, not entirely. It is that they are getting paid, so that is critical and differentiating for many of the other cases. And secondly, the extent of restrictions is very limited, and even their strongest argument of restriction, which is we're on-call so we can respond to an emergency, is at best a benefit to both. So I don't concede it's only... It's a benefit to both how? Because the worst case scenario was respond to a riot, and if you're an officer in that jail, that jail, as many will tell you, they want to respond, they want to help, they want to be there and make sure everybody's safe, and they want to do it for themselves and they want to do it for their fellow officers. I got the impression that this report was thinking in terms of prison riots when she thought of emergencies. Yes. He wanted to say that was sort of the worst case scenario, and even then I think his words were it benefits both or it's a wash. So of course it benefits the employee, but it also benefits the employee. And that's the worst one. I suppose you could make the argument then that any safety situation endures to the benefit of the employee because he doesn't want that safety situation to impact him or her. Isn't that a tough argument? I mean, I get the riot, okay, but if you extrapolate that argument, then you could say any safety situation that you respond to really endures to both the benefit of the employee and the employer, and that can't possibly be right. Well, I'm not sure it can't possibly be right, but we were talking based on... I mean, the proposition generally applied, can't possibly be right, and now you're going to tell me why that's wrong. Because what the court was doing in analyzing that kind of example was it's like the worst one, and even the worst one benefits both. So when you're talking about restrictions, that's the worst one, and that still benefits both sides. All the others are limited, de minimis, like other courts, including this court, have looked at. I don't know. I mean, because I'm thinking, you know, maybe this isn't an apt analogy, but I'm thinking of cops, you know. I mean, that would mean that, you know, if we were dealing with cops instead of correctional officers, we'd argue that anything that a cop did would be also enduring to his or her benefit. And we're only talking again about this period when there is a question of whether they're going to be compensated, and to the extent they are called to do something in our situation, they are compensated. To the extent those officers in many cases were called, they were not always compensated. And so I do think that's a critical fact, and it is in the record for the court's consideration. Does the question arise, excuse me, does the question as a factual matter arise when somebody, a guard, was called? Does the guard say, I should be paid for that time, and the person say, no, we're not going to pay you for that because it wasn't important? That hasn't been in the record nor alleged, and just to be clear, the CBA says if you're called, you get paid. So I don't know that we have to go there. That is the regular way. Yes, you're right. Thank you, Ms. Jones, very much for your argument. Thank you. Mr. Swindler. Thank you. Too many suddenly? Thanks. I just want to address a few things. We can relax. One, there is a circuit level decision that came to the court on a motion of the pleadings on a meal break case. It was Alexander v. City of Chicago, and in that case, the court specifically held, and I think it's important. That's a Seventh Circuit case? That is a Seventh Circuit case, and I think it's the sheet of paper up here. What's the name of that case? I'm sorry? Alexander v. City of Chicago. Alexander v. City of Chicago, Seventh Circuit. For some reason, I can't find the quote right now. But the court specifically found that one of the errors that the lower court made was deciding the case on a motion on the pleadings under 12C. This was pre-Twombly. Sorry, my mind. But even though it was pre the new pleading standards, it was on 12C, and so the court accepted all the allegations in the complaint as true and determined if the case could be decided on the pleadings. The court held it was a mistake and an error of the lower court to determine at that basis and compared the case directly to Lamont v. City of Shawnee, which is the Tenth Circuit case. In Lamont v. City of Shawnee, it was a police officer case. The police officers were allowed to remain in their jurisdiction. They were allowed to go home if they lived in their jurisdiction. They were allowed to eat at restaurants if those restaurants were in their jurisdiction. They had to keep their... If they were any good. I'm sorry? That's right. Good or not, I suppose. The Seventh Circuit decided another case, Leahy, which I mentioned before, but police officers can't do any of that. And the court concluded that their time was not compensable. Your Honor, I don't think that was on the pleadings, and I think that one of the issues here, again, is this is a 12B6 motion. And on that point, what you seek in terms of discovery is how frequent the officers were interrupted so that they had to work. Well, that's not the only fact. I mean, there's been numerous facts my adversary just stated, which aren't on the record, which she apparently thinks support her argument, such as an exercise room. That's not on the record, and that may be disputed, how they can use the exercise room. Can they actually work out? Are their interruptions too frequent? But you have to keep the uniform. If they couldn't, you could have put that in your brief. Your Honor, we represent, first of all, I do want to come back to one issue of the amendment. You would have said they have no exercise room, they're stuck in a row, We can say there's no roller coaster and there's no theme park, and I don't know if we'd agree that we would say everything. You wouldn't say there was no mountain either, but there may not be a mountain. Ms. Babcock, who is the lead plaintiff in this case, filed this case as a collective action. The amendment was filed before nearly 100 new officers came in. The amendment was not filed as a result of this alleged deficiency. It was filed because when we first filed, we asserted state law claims, which we removed from the complaint. That was the purpose of the amendment. It was years before because of the arbitration. It was years before procedurally their motion to dismiss was ever filed. It was probably about a year and a half before. So the amendment was never to deal with this argument directly. We never amended for this issue directly. And I think that's important because at the bottom of this is a First Amendment complaint that we should have asserted more facts. The amendment we made simply dropped the state law claims very, very early on in the case, before the case was stayed, sent to arbitration, arbitrated through a four-step grievance procedure, and brought back to the district court. All right. I have two points that I want you to respond to that your adversary talked about. Number one, with regard to the application of the predominant benefits test, she's argued that the fact that you all, your clients, that is, get paid if they are called, is a critical factor in applying the predominant benefits test, and that as such that should influence us greatly in stating that we should affirm the district court. The second question is this notion that you all are in charge of the facts, which I suppose you've answered in part by giving us a little history on what the subject of the amendment was. But maybe you can be more specific in stating exactly what the effect of having had this influx of 100 plaintiffs into the case at the stage that you did, and how that adversely affected your ability to discern the facts and do the discovery that you now say you need. Okay. I'll take them in turn. First of all, every police case that I'm aware of that's been cited to the court, the individuals were paid for interruptions in their meal period if they were called because of an emergency. And I heard the defense counsel numerous times say that's not the case. The regulations, as Your Honor made clear, say you have to pay when there's an interruption. Just because you pay for the interruption does not mean that the on-call time when you're not interrupted is somehow not compensable. In fact, there's a specific regulation, 785.17, which deals with on-call time, and it states that an employee who is required to remain on-call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while on-call. That's 785.17. It says an employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with the company officials where he may be reached is not working while on-call. So in this situation, my adversary has admitted these individuals are on-call the whole hour. She's admitted they're required to remain on-premises the entire time. Under 785.17, this is work time, and you can't walk around that issue because you're allowed to eat a sandwich during that period. Just like if police officers are on a stakeout, even though having multiple officers there for backup protects all the officers on the scene, if they're in the car eating a sandwich on a stakeout, it's not suddenly a meal period. That is a compensable period of time, as is the time that we have at issue. Does the fact just that you're on-call mean that it's for the employer? I think that the fact that you're on-call is always a factor. A factor. It's a factor. It's not always determinative, but it is a factor that is on the employee's side in these cases that this time is not for my benefit. There may be so many factors on the other side, it's still not compensable, if the court agrees that the predominant benefit test applies. If the court agrees with relief of all duties, then I suppose there's no balance that needs to be applied. But provided the court does a predominant benefit test, which we haven't argued otherwise, provided that that occurs, then that's clearly a factor that goes in our favor in this case, and then there may be other factors, but that is a factor that goes in our favor. And then the other issue of how this issue of having 100 new plaintiffs in the case has affected the factual record. To be frank, I think the biggest thing that's affected our ability to amend is a lead plaintiff died in the middle of the arbitration part. We do have a person who's agreed to step up, but pending the appeal, that hasn't been dealt with yet. So I'm dealing with a deceased named plaintiff at the moment. That has affected our ability to investigate the case. Well, but there are other union members beside Ms. Batcock. Right. Yes, there are, and it's not that we haven't contacted any of them. You just asked how has the developments in the case affected our ability. Obviously, the largest impediment we have to investigate in the case is the dismissal of the case, which has prohibited us from getting discovery to learn all the facts, to learn prison-wide, which I don't think any of our individual clients would know. How often are individuals interrupted in their meal period prison-wide to learn prison-wide? What are the written regulations about staffing levels? Why have they been developed that way? You can take discovery on that. I'm sorry? You can take discovery on that. I agree, but we're here on 12B-6. I mean, we would love to take discovery on that. That's exactly one of our primary arguments, that we should be entitled to discovery on these issues. We haven't been given the opportunity to. In terms of the predominantly benefits test, Judge Greenaway was asking you about that and the fact that the guards are actually paid for that 15 minutes. Should their duty be required? They're paid, just to be clear. It's a little confusing. It's an unusual provision. It's now a long period, and we've never claimed to – in fact, it was the defense that claimed that somehow the court should look at the 15 minutes separately, and we told the court in our reply that's artificial. So 45 minutes is paid. The entire hour is on call. The entire hour they are subject to all these restrictions. The entire hour they are required to respond on a moment's notice in case of emergency. So if their duties are required for those 45 minutes, they're paid, no problem. They're paid for those 45 minutes. But if that duty extends 15 more minutes than the 45, they don't get paid. That's not in the factual record. I think that's your case. No, no. Our argument is they should be paid regardless of whether there's an interruption because the reality of the restrictions makes it so that whether there's an interruption on a particular day is not relevant to whether the period of time as a whole inheres to the benefit of the employer. You mean the potential restrictions? Yes. No, no, no. There's actual restrictions, the potential call. The restrictions are absolute. They can't leave the prison. They have to be near the Reich. They have to be ready to respond at a moment's notice.  And they can be disciplined if they're not. So you're asking for compensation for the 15 minutes and the potential that they may get called. We're asking for the 15 minutes because of the restrictions that are inherent in being on call. So what do you need discovery to prove? Because we'd like to, well, Your Honor, we'd like to, one, know how the prison is staffed. We'd like to know why it is that these individuals aren't allowed to leave the prison because we think those things will show that it reduces staffing levels, which is a benefit to the employer. In other words, you're challenging the restrictions. We're challenging the non-compensability of being on call while being tied to the premises in a prison in a small area without the ability to perform your own personal pursuits and use the time to your own. If you were paid for the entire time, would you challenge anything? No, if there was an hour of paid time, there would be no litigation. I mean this issue is about the unpaid time. So you're really, it's a misusing issue. I'm not understanding that. Yes. Based on your adversary's response to our questions, hey, what part of the hour is not compensated? Because the moment a prison official picks up the phone and says, Joe, report to whatever, I'm being compensated, yes? That's not in the complaint. I mean the allegations in our complaint are no. They're not paid for 15 minutes of the hour, period. No, no. Judge Greenaway is saying there's an interruption. No, I understand that. And what I'm telling you is that there hasn't been discovery. And so I'm not trying to avoid the question. Under the CBA, under the CBA, they would be paid, which is not, it is not alleged that the CBA was followed or not followed in the complaint. The issue, though, because I don't want to go on a tangent. I'm just trying to make sure the Court realizes what's on the record and what isn't. The issue that we take issue with is the 15 minutes, whether interrupted or not, is not paid. So even on the non-interrupted meal period, it's not paid. And that is an assertion we make in this lawsuit. So then your adversary's assertion is not in the record, right? Because this was a motion made before the answer. It's not a 12C. It's a 12B. That's right. That's right. So there's nothing that was before the district court or before us that would support the notion that the guards are being paid for this on call. For an interruption. Right, for an interruption. That's correct. It's not on the record. But isn't it in the rec? Is there an interruption? Your Honor, the law clearly would require compensation. It's not pled. No, no, no. You're not focusing us. So the complaint says we're not getting paid. That's right. Anything that is being said other than that, because there's no answer. That's right. No consideration. That's correct, Your Honor. Is not in the record. That's correct. But to make sure when you review the pleadings, you don't think I've said something that doesn't agree with the premise. I just want to be clear. But the CBA is part of the record, and the CBA says you've got to get paid. Well, the CBA says these are our policies. Whether or not they were followed for these specific individuals is not on the record. That's different. But the CBA says you've got to – if you're – if Judge Greenaway is hypothetically, you pick up the phone and he says, I need you for duty. Right. You've got to get paid. I think that's true. The CBA says that. It is part of the record because the CBA says it. Whether these individuals are paid for those interruptions is not on the record. And that's – You mean if they follow the CBA? I'm almost afraid that I'm going on a theory here. No, no, no. So the CBA says it, but you're saying we don't know that to be so. We don't know if they followed it. That's what I'm saying. There wasn't – that's what I'm saying. It's not – but it's not the basis of our complaint. Our basis of our complaint is even when it's not interrupted, it still inerts the benefit of the employer for all the reasons that we've articulated here today in our briefs. Okay. Thanks. Good. Mr. Swindler, thank you very much. Ms. Jones, thank you as well. We'll take the case under advisement.